1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL GOMEZ,<br><br>              Petitioner,<br><br>      v .<br><br>R. BARNES, Warden,<br><br>             Respondent. | Case No. CV 12-6043 JC<br><br>MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING ACTION |

## I.   SUMMARY

On July 13, 2012, petitioner, who is in state custody and is proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") challenging a criminal judgment in Los Angeles County Superior Court on multiple grounds.

On January 18, 2013, respondent filed an Answer ("Answer") and lodged multiple documents ("Lodged Doc."), including the Clerk's Transcript ("CT") and the Reporter's Transcript ("RT").  On March 28, 2013, petitioner filed a Traverse ("Traverse").

The parties have consented to proceed before the undersigned United States Magistrate Judge.

For the reasons explained below, the Petition is denied and this action is dismissed, in part with prejudice, and in part without prejudice.

## II.   PROCEDURAL HISTORY

On February 3, 2010, a Los Angeles County Superior Court jury found petitioner guilty of attempted premeditated murder (Cal. Penal Code §§ 664/187(a) count 1), possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1); count 2), street terrorism (Cal. Penal Code § 186.22(a); count 4), second degree robbery (Cal. Penal Code § 211; count 5), driving on a license suspended for a prior driving under the influence (DUI) conviction (Cal. Vehicle Code § 14601.2(a); counts 6 & 7), and resisting, obstructing, or delaying a peace officer or EMT (Cal. Penal Code § 148(a)(1); counts 8 & 9).  (CT 163-71).  The jury also found true, among other allegations, that:  (1) petitioner committed the offenses charged in counts 1, 2, 5, 6 and 7 for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members (Cal. Penal Code § 186.22(b)(1) [counts 1, 2 & 5]; Cal. Penal Code § 186.22(d) [counts 6 & 7]); (2) as to count 1, a principal personally and intentionally discharged a firearm which proximately caused great bodily injury to the victim (Cal. Penal Code §§ 12022.53 (d), (e)(1)); and (3) as to count 5, a principal personally used a firearm (Cal. Penal Code §§ 12022.53(b), (e)(1)).  (CT 163-69).

Petitioner thereafter waived his right to trial on prior conviction allegations and, on March 3, 2010, admitted that he had suffered a prior conviction for possession of a firearm by a felon on September 23, 2002 and a prior conviction for assault with a deadly weapon on November 7, 2005.  (RT 2402-05).

On March 24, 2010, the trial court sentenced petitioner to a total of 62 years and four months to life in state prison.  (CT 224-33).

///

///

2

On June 22, 2011, the California Court of Appeal affirmed.  (Lodged Doc. 6).  On September 28, 2011, the California Supreme Court denied petitioner's petition for review.  (Lodged Doc. 8).

On March 23, 2012, petitioner filed a petition for writ of habeas corpus in the California Supreme Court which such court denied on June 13, 2012, with a citation to <u>People v. Duvall</u>, 9 Cal. 4th 464, 474 (1995).[1]  (Lodged Docs. 9-10).

## III.   FACTS[2]

### A.   The Attempted Murder of Saunoa Joseph Laumua

On January 13, 2008, at approximately 8:00 p.m., Saunoa Joseph Laumua, who is in a wheelchair, was shot on his way to a Baskin-Robbins in Cerritos.  As he wheeled himself down Ely Avenue, a green van drove up to him and the men inside asked, "Where you from?"  When Laumua said, "I'm from nowhere," the men responded, "Yeah, you're Sporty from Artesia."  Laumua said, "I'm in a wheelchair.  I don't bang no more."  The driver then instructed the passenger to shoot Laumua and "finish him."  The van sped away when neighbors yelled that they had called the police and that the men should leave Laumua alone because he was in a wheelchair.  Police found Laumua lying on the sidewalk in a small pool of blood and in pain.  Laumua was shot under the right armpit and the bullet lodged in his back.  Laumua was taken to the hospital and remained there for approximately two and a half weeks.

J.V. was sitting in his parked car nearby when he heard three gunshots.  He then saw a dark minivan speed by, either a Dodge Grand Caravan or a Plymouth

---

[1]The Ninth Circuit has read the California Supreme Court's denial of a habeas petition with a citation to <u>Duvall</u> as, in effect, the grant of a demurrer, *i.e.*, a holding that the petitioner did not plead facts with sufficient particularity.  <u>Cross v. Sisto</u>, 676 F.3d 1172, 1177 (9th Cir. 2012) (citations omitted).

[2]The facts set forth are drawn from the California Court of Appeal's decision on direct appeal.  (Lodged Doc. 6 at 2-7).  Such factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

Voyager, and memorized a partial license plate, "5PG."  At trial, J.V. testified that a photograph of petitioner's van was similar to the van he saw the day Laumua was shot.  Deputy Sheriff John Lozada recovered four shell casings and two bullet fragments within five to six feet of where Laumua had fallen.

**B.   The Robbery of D.A.**

On January 17, 2008, at approximately 11:25 p.m., D.A. and M.B. were robbed as they walked home from work.  A dark green van pulled in front of them and two men got out of the van.  M.B. was able to get away, but the men grabbed D.A.  One of the men put a gun to D.A.'s left temple and demanded, "Give me whatever you have.  Otherwise we're going to shoot you."  D.A. complied and gave the men his wallet and cell phone.  The driver, who had remained in the van, told the two men to "[h]urry up.  Come back.  Let's go.  Let's go."  D.A. wrote down the license plate number – 5PGK698 – as the van drove away.  At trial, D.A. identified the gun that was used as well as the dark green van and one of the robbers.

The green van was spotted by sheriff deputies at approximately 1:30 a.m. that night in Hawaiian Gardens.  They observed petitioner driving and getting out of the van.  After a brief pursuit, which ended in petitioner being bitten by a police dog, petitioner was arrested in connection with the robbery of D.A.  A search of the van revealed a gun with a magazine containing five rounds in it as well as one round in the chamber.  A second magazine was found next to the gun.  Black gloves, some compact discs marked "H.G." and "M.D.T.S." and a digital scale were also found in the van.  The bullet fragments found near the shooting of Laumua were found to have been fired from the gun.  In addition, petitioner's DNA was found on it.

Andrew Duran was a minor when he was arrested on February 5, 2008, in connection with the robbery of D.A. and an unrelated attempted murder.  He pled no contest to both charges and was sentenced as an adult to nine years in state

prison.  In a taped interview, which was played to the jury, he told police that petitioner picked him up in a van along with another man, "Robbie."  They rode around in the van to see if they could "find something."  When they saw D.A. and M.B., petitioner threw a gun to Robbie and said, "Get 'em, get 'em."  At trial, Duran denied any knowledge of the robbery or of his interview with the detectives.  Detective Gary Sloan of the Los Angeles County Sheriff's Department testified that Duran admitted during an interview that petitioner was his friend and that petitioner was the driver of the green van at the time of the robbery.  Detective Brandt House, Sloan's partner, identified tattoos on Duran's body as Hawaiian Gardens gang tattoos.  House explained that Duran could be labeled a snitch if he testified against petitioner and would be marked for death by gang members as a result.

### C.    The Trial

At trial, the prosecution presented testimony and evidence as described above.  The prosecution also presented testimony from Detective House, who qualified as a gang expert.  House testified that respect was important to gang members and that they committed crimes to garner respect and elevate their status within the gang.  Gang members also had gang-related tattoos to show pride in their gang.  A gang member who had a reputation for cooperating with law enforcement or snitching, however, would eventually be marked for death.  House testified that it was very difficult to get witnesses or victims to testify in court about gang crimes.  According to House, the question, "Where are you from" was a gang challenge that alerted the person questioned to an imminent assault.

Detective House also testified to the Hawaiian Gardens gang specifically, stating that they had been in existence since the late 1950's and had over 1,000 documented members, over 250 documented affiliates and claimed the entire City of Hawaiian Gardens.  The common abbreviations for the gang were "H.G.," which stood for Hawaiian Gardens, "M.D.T.S.," which stood for Malditos,

"V.H.G.," which stood for Varrio Hawaiian Gardens, and "L.Q.T.S.," which stood for Loquitos.  The primary activities of Hawaiian Gardens were aggravated assault, murder, attempted murder, assaults with guns, petty theft, robbery, extortion, hate crimes against African-Americans, possession of firearms and narcotics for sale and possession of stolen vehicles.  Hawaiian Gardens gang's primary enemies were Artesia and Chivas.

As to Laumua, Detective House testified that he observed tattoos all over his body, including on his head and neck, which marked him as an Artesia gang member.  House further testified that Laumua was a respected member of the Artesia gang and he had been credited with committing several crimes in the Hawaiian Gardens area.  As a result, a Hawaiian Gardens gang member who shot and killed Laumua, a "high value target," would garner much respect and status in the gang.  In fact, four previous attempts had been made on Laumua's life by Hawaiian Gardens gang members.

As to petitioner, Detective House testified that he had a large "H" and "G" tattooed on his arms with "Hawaiian" and "Gardens" tattooed beneath the corresponding letter.  House noted petitioner lived in Hawaiian Gardens and both his brothers were Hawaiian Gardens gang members.  Further, a field interview card showed that petitioner admitted his gang membership when he was found in the company of five other Hawaiian Gardens gang members with a nine-millimeter pistol and marijuana.  In response to several hypotheticals that closely tracked the facts in the case, House opined that the crimes at issue were committed for the benefit of a street gang.

At trial, Laumua refused to answer any of the prosecutor's questions, invoking his Fifth Amendment privilege against self-incrimination.  As a result, Laumua's testimony at the preliminary hearing was read to the jury.  Laumua testified at the preliminary hearing that he had been an Artesia gang member since he was 16 and was known as "Moreno."  He also testified that Artesia's main

enemies were Hawaiian Gardens and Norwalk. Laumua acknowledged that members of his gang did not like rats or snitches who talked to the police or testified in court. Laumua denied telling the detectives any details of the shooting in his interviews with them, including identifying the shooter or the van. He stated he was taking morphine and vicodin at the time of his interviews and he did not remember anything he told the detectives. He also denied telling his mother anything more than that he had been shot and had fallen out of his wheelchair.

Laumua was impeached at the preliminary hearing by the recordings of his interviews with the police, by Detective House's testimony about those interviews and by his mother's testimony regarding his statements to her about the shooting. Laumua's mother testified at the preliminary hearing that she spoke to Laumua about the shooting and his account of the shooting was consistent with the events described above. She stated that Laumua told her the van in question was just like her Dodge Grand Caravan and that he knew the men involved in the shooting because he had been in jail with one of them. She also testified that Laumua told her he identified both the shooter and the driver from a photographic lineup but was afraid to testify in court for fear of retaliation. On cross-examination, defense counsel questioned her regarding her son's incarceration and his identification of the suspects, including his description of them.

At the preliminary hearing, Detective House testified that Laumua described the shooting in detail during his interviews with him. House confirmed that Laumua circled petitioner's picture in a photographic lineup, identifying him as the driver of the van and also identified the green van driven by petitioner. House further testified that Laumua did not appear incoherent, did not slur, did not nod off and never appeared unable to understand questions when he interviewed him at the hospital or later at his home. Laumua's tape-recorded interviews with the police were played to the jury, who heard that he circled someone's picture from a
///

1  photographic lineup, discussed the details of the shooting with the officers, and

2  identified the green van from a photograph.

3      The defense presented testimony from two witnesses who lived near the

4  intersection where Laumua was shot. They were both home that evening and

5  heard the gunshots. One witness testified that she saw a dark-colored SUV in the

6  area and both testified that no one was near the victim after the shooting.

7  **IV.   STANDARD OF REVIEW**

8      This Court may entertain a petition for writ of habeas corpus on "behalf of a

9  person in custody pursuant to the judgment of a State court only on the ground that

10 he is in custody in violation of the Constitution or laws or treaties of the United

11 States." 28 U.S.C. § 2254(a). A federal court may not grant an application for

12 writ of habeas corpus on behalf of a person in state custody with respect to any

13 claim that was adjudicated on the merits in state court proceedings unless the

14 adjudication of the claim:  (1) "resulted in a decision that was contrary to, or

15 involved an unreasonable application of, clearly established Federal law, as

16 determined by the Supreme Court of the United States"; or (2) "resulted in a

17 decision that was based on an unreasonable determination of the facts in light of

18 the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[3]

19     In applying the foregoing standards, federal courts look to the last reasoned

20 state court decision. See Smith v. Hedgpeth, 706 F.3d 1099, 1102 (9th Cir.), cert.

21 denied, 133 S. Ct. 1831 (2013). "Where there has been one reasoned state

22 judgment rejecting a federal claim, later unexplained orders upholding that

23 judgment or rejecting the same claim rest upon the same ground." Ylst v.

24 _____

25     [3]When a federal claim has been presented to a state court and the state court has denied
26 relief, it may be presumed that the state court adjudicated the claim on the merits in the absence
   of any indication or state-law procedural principles to the contrary. Harrington v. Richter, 562
27 U.S. 86, 131 S. Ct. 770, 784-85 (2011); see also Johnson v. Williams, 133 S. Ct. 1088, 1094-96
   (2013) (extending Richter presumption to situations in which state court opinion addresses some,
28 but not all of defendant's claims).

1    Nunnemaker, 501 U.S. 797, 803 (1991) (cited with approval in Johnson v.

2    Williams, 133 S. Ct. 1088, 1094 n.1 (2013)); Cannedy v. Adams, 706 F.3d 1148,

3    1158 (9th Cir. 2013) (it remains Ninth Circuit practice to "look through" summary

4    denials of discretionary review to the last reasoned state-court decision), as

5    amended on denial of rehearing, 733 F.3d 794 (9th Cir. 2013), cert. denied, 134

6    S. Ct. 1001 (2014).

7         However, to the extent no such reasoned opinion exists, courts must conduct

8    an independent review of the record to determine whether the state court clearly

9    erred in its application of controlling federal law, and consequently, whether the

10   state court's decision was objectively unreasonable.  Delgado v. Lewis, 223 F.3d

11   976, 982 (9th Cir. 2000), abrogated on other grounds, Lockyer v. Andrade, 538

12   U.S. 63, 75-76 (2003); see also Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770,

13   784 (2011) ("Where a state court's decision is unaccompanied by an explanation,

14   the habeas petitioner's burden still must be met by showing there was no

15   reasonable basis for the state court to deny relief."); Cullen v. Pinholster, 131 S.

16   Ct. 1388, 1402 (2011) ("Section 2254(d) applies even where there has been a

17   summary denial.") (citation omitted).

18        When it is unclear whether deference under the foregoing standards applies,

19   federal habeas courts can deny writs of habeas corpus under Section 2254 by

20   engaging in a *de novo* review.  Berghuis v. Thompkins, 560 U.S. 370, 390 (2010).

21   When it is clear that the state court has not decided an issue on the merits, or when

22   a state court's adjudication of a claim on the merits results in a decision contrary

23   to or involving an unreasonable application of clearly established federal law or is

24   based on an unreasonable determination of the facts, review is also *de novo*.  See

25   Cone v. Bell, 556 U.S. 449, 472 (2009); Panetti v. Quarterman, 551 U.S. 930, 953

26   (2007); Hurles v. Ryan, 752 F.3d 768, 778 (9th Cir.), cert. denied, 135 S. Ct. 710

27   (2014).

28   ///

1  **V.   DISCUSSION**[4]

2         Petitioner claims he is entitled to federal habeas relief because:

3  (1) evidence introduced at his trial was the product of a search and seizure which

4  violated the Fourth Amendment and his trial and appellate counsel were

5  ineffective in failing to so argue (Claim 1); (2) the trial court violated petitioner's

6  due process and confrontation rights by excluding evidence that Detectives Sloan

7  and House had been accused of fabricating reports and lying on the stand (Claim

8  2); (3) the trial court violated petitioner's confrontation rights in admitting

9  Laumua's preliminary hearing testimony and evidence of Laumua's prior

10 inconsistent statements which were introduced at the preliminary hearing (Claim

11 3); (4) the admission of evidence regarding petitioner's prior criminal history

12 violated due process and trial counsel was ineffective in not objecting thereto

13 (Claim 4); (5) the trial court improperly permitted the gang expert to opine about

14 petitioner's specific intent (Claim 5); (6) the prosecutor committed misconduct in

15 closing argument by vouching for the credibility of Detectives Sloan and House

16 based on facts which were not in evidence; and (7) errors at trial cumulatively

17 deprived him of due process.  (Petition at 5-6, 12-50).  Petitioner is not entitled to

18 federal habeas relief on any of his claims.

19         **A.    Petitioner Is Not Entitled to Federal Habeas Relief on Claim 1 –**

20                **Fourth Amendment – Related Ineffective Assistance of Counsel**

21         Petitioner contends that he is entitled to habeas relief because the

22 introduction of evidence derived from an allegedly unconstitutional search of his

23 van at an impound lot – namely the firearm used in the attempted murder and

24 robbery bearing petitioner's DNA – violated his Fourth Amendment right to be

25 free from unreasonable searches and seizures.  (Petition at 5, 12-24; Traverse at 7-

26 _____

27         [4]Except as to Claim 1, which the Court has rejected on procedural grounds, the Court has
   read, considered and rejected on the merits all of petitioner's contentions.  The Court discusses
28 petitioner's principal contentions herein.

8, 13-17).  He also claims that his trial counsel was ineffective in failing to move to suppress such evidence, and that his appellate counsel was ineffective in failing to assert a Fourth Amendment claim on direct appeal.  (Petition at 12, 22-24; Traverse at 7-8, 18-19).  The California Supreme Court – the only state court to have considered such claims – rejected them with a citation to People v. Duvall, 9 Cal. 4th 464, 474 (1995).  Respondent argues that the Fourth Amendment claim is not cognizable on federal habeas review, that such claim and the related ineffective assistance of counsel claims are unexhausted, and that, in any event, petitioner's contentions lack merit.  (Answer at 9-18).  Petitioner responds that the Fourth Amendment claim is exhausted and should be considered on its merits (Traverse at 8-10), but that, in the event the Court concludes that the related ineffective assistance of counsel claims are unexhausted, petitioner wishes to withdraw them and asks that the Court dismiss them.  (Traverse at 10).

First, the Court addresses petitioner's Fourth Amendment claim.  Where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.  See Stone v. Powell, 428 U.S. 465, 494 (1976).  California affords such an opportunity to criminal defendants under state law.  See Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990).  In this case, petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court by virtue of California Penal Code § 1538.5.[5]  The fact that petitioner and his counsel did not avail themselves of such an opportunity is immaterial.  Ortiz v. Sandoval, 81 F.3d 891, 899 (9th Cir. 1996) (relevant inquiry is whether petitioner had opportunity to litigate his claim, not whether he did in fact do so or even whether claim was

---

[5]California Penal Code Section 1538.5 authorizes criminal defendants to seek the suppression of evidence obtained as a result of an unreasonable search or seizure.  Cal. Penal Code § 1538.5.

correctly decided) (citations omitted).  Accordingly, petitioner's Fourth
Amendment claim is not cognizable on federal habeas review and must be
rejected.[6]

Second, the Court addresses respondent's contention that petitioner's
related ineffective assistance of counsel claims are unexhausted.  As a matter of
comity, a federal court will not entertain a habeas corpus petition unless the
petitioner has exhausted the available state judicial remedies on every ground
presented in the petition.  See O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999)
("Comity thus dictates that when a prisoner alleges that his continued confinement
for a state court conviction violates federal law, the state courts should have the
first opportunity to review this claim and provide any necessary relief."); see also
Rose v. Lundy, 455 U.S. 509, 518-22 (1982); Park v. California, 202 F.3d 1146,
1150 (9th Cir.), cert. denied, 531 U.S. 918 (2000).

Title 28, United States Code, section 2254(b)(1), explicitly provides that a
habeas petition brought by a person in state custody shall not be granted unless it
appears that:

> (A) the applicant has exhausted the remedies available in the
> courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to
> protect the rights of the applicant.

State remedies have not been exhausted unless and until the petitioner's
federal claims have been fairly presented to, and disposed of on the merits by the
highest court of the state.  See Baldwin v. Reese, 541 U.S. 27, 29 (2004); James v.
Borg, 24 F.3d 20, 24 (9th Cir.), cert. denied, 513 U.S. 935 (1994).  Generally, a

---

[6]In light of such determination, the Court need not and does not address whether such
claim is unexhausted.

claim has not been fairly presented if it has been raised "in a procedural context in which its merits will not be considered." Castille v. Peoples, 489 U.S. 346, 351 (1989). If, however, it is clear that a claim is procedurally barred under state law, then no state remedies remain available and the requisite exhaustion exists. See Castille, 489 U.S. at 351-52; Johnson v. Zenon, 88 F.3d 828, 831 (9th Cir. 1996).

Where the California Supreme Court denies a habeas petition with a citation to Duvall, the denial constitutes a determination that the petitioner has not pleaded facts with sufficient particularity and can signify a failure to exhaust available state remedies. Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986). A federal habeas court must examine independently the sufficiency of a petitioner's California Supreme Court petition, and will reach the merits of the claims where the state petition presented the claims "with as much particularity as is practicable." Id. at 1320.

The petitioner has the burden of demonstrating that he has exhausted available state remedies. See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), as amended (1998) (habeas petitioner carries burden of proving exhaustion of all available state remedies) (citation omitted), cert. denied, 532 U.S. 919 (2001); Olson v. McKune, 9 F.3d 95 (10th Cir. 1993) (state prisoner bringing a federal habeas corpus action bears burden of showing that he has exhausted available state remedies) (citation and quotation marks omitted).

Here, petitioner has not met his burden to demonstrate that the instant ineffective assistance of counsel claims have been exhausted. Petitioner did not present his instant claims – that his trial and appellate counsel were ineffective in failing to raise a Fourth Amendment claim – to the California Supreme Court with as much particularity as was practicable. At a minimum, petitioner could practicably have alleged whether or not he and his attorneys discussed the matter, whether his attorneys explained their rationale, if any, for not mounting a Fourth Amendment challenge to the search of the van in issue and if so, what such

1   rationale was.  To the extent petitioner and his attorneys did not

2   contemporaneously discuss the matter, petitioner could practicably have described

3   any subsequent efforts to contact his attorney to obtain information or a

4   declaration explaining any such rationale.  Accordingly, the Court concludes that

5   such ineffective assistance of counsel claims are unexhausted.[7]

6       Because the Petition contains both exhausted and unexhausted claims, and

7   is therefore "mixed," the Court must further assess the appropriate disposition of

8   the Petition as a whole.  A district court generally must dismiss mixed habeas

9   corpus proceedings, that is, proceedings which raise both exhausted and

10  unexhausted claims.  Rose v. Lundy, 455 U.S. at 522.  However, a court may not

11  dismiss a mixed petition without first permitting the petitioner the opportunity to

12  amend the petition to delete unexhausted claims.  Jefferson v. Budge, 419 F.3d

13  1013, 1015-16 (9th Cir. 2005) (citations omitted).  Here, petitioner has already

14  advised the Court that he wishes to withdraw the foregoing ineffective assistance

15  of counsel claims in the event the Court concludes that they are unexhausted.

16  Accordingly, petitioner's claims that his trial and appellate counsel were

17  ineffective in failing to raise a Fourth Amendment challenge to the search in issue

18  are dismissed without prejudice.

19  _____

20      [7]While, as noted above, the exhaustion requirement may be satisfied if a petitioner's
    unexhausted claims are clearly procedurally barred under state law, see Castille, 489 U.S. at 351-

21  52; Johnson, 88 F.3d at 831, here it is not  "clear" that the California Supreme Court would deem
    petitioner's instant ineffective assistance of counsel claims procedurally barred under state law if

22  petitioner were to raise them in a more particularized habeas petition in the California Supreme
    Court.  See In re Harris, 5 Cal. 4th 813, 825 (1993) ("[H]abeas corpus has become a proper

23  remedy in this state to collaterally attack a judgment of conviction which has been obtained in
    violation of fundamental constitutional rights.") (citations omitted); People v. Sorenson, 111 Cal.

24  App. 2d 404, 405 (1952) (claims that fundamental constitutional rights have been violated may
    be raised by state habeas petition).  This Court expresses no opinion regarding whether

25  consideration of a more particularized state habeas petition might be foreclosed by the principles

26  discussed in In Re Clark, 5 Cal. 4th 750, 763-87 (1993).  That is a matter for the California

27  Supreme Court to evaluate in the first instance.  Even if an applicable state procedural bar exists,
    the California Supreme Court nevertheless might choose to reach the merits of such claims.  See,

28  e.g., Park v. California, 202 F.3d at 1151-52.

1

**B.      Petitioner Is Not Entitled to Federal Habeas Relief on Claim 2 –**

2

**Exclusion of Alleged Prior Acts of Detectives**

3          Petitioner argues that the trial court violated petitioner's due process and

4   confrontation rights by excluding evidence that Detectives Sloan and House had

5   been accused of fabricating reports and lying on the stand and refusing to allow

6   petitioner's counsel to impeach the detectives with such evidence.  (Petition at 5,

7   25-27; Traverse at 21-27).  The California Court of Appeal – the last state court to

8   issue a reasoned decision addressing this claim – rejected it on the merits on direct

9   appeal.  (Lodged Doc. 6 at 18-19).  Petitioner is not entitled to federal habeas

10  relief on this claim.

11                **1.      Additional Pertinent Facts**[8]

12          Five days into the trial, petitioner, for the first time, indicated that he wanted

13  to impeach the credibility of Detectives House and Sloan during cross-

14  examination.  At sidebar, defense counsel explained that Robert Rodriguez would

15  testify that House and Sloan filed false reports and gave false testimony two years

16  ago in his drug possession case.  Rodriguez claimed that the detectives testified

17  falsely about a statement he made to them when he never made that statement.

18  The trial court ruled that petitioner would not be permitted to ask House and Sloan

19  about their testimony in Rodriguez's case or to present testimony from Rodriguez.

20  The court reasoned, "assuming it gets past the hearsay objection, again assuming

21  in some way it's relevant, it is only collaterally relevant as to that credibility issue,

22  and, in exercising the court's discretion, in analyzing all these factors under

23  ///

24  ///

25  ///

26  _____

27          [8]The facts set forth are drawn from the California Court of Appeal's decision on direct
appeal.  (Lodged Doc. 6 at 18).  Such factual findings are presumed correct.  28 U.S.C.

28  § 2254(e)(1).

1   [Evidence Code section] 352,[9] the court finds that it's more prejudicial than

2   probative, more time-consuming as well as confusing to the jury, and the court

3   will sustain the objection as to that line of questioning."  The court also noted that

4   any discrepancy between the detectives' testimony at trial and the statements made

5   to them by Rodriguez could easily be interpreted as a mistake rather than fraud.

6                                    **2.    Pertinent Law**

7          Whether rooted directly in the Due Process Clause of the Fourteenth

8   Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth

9   Amendment, the Constitution guarantees criminal defendants a meaningful

10  opportunity to present a complete defense.  Crane v. Kentucky, 476 U.S. 683, 690

11  (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)) (citations

12  omitted); Chambers v. Mississippi, 410 U.S. 284, 294 (1973).

13         However, to evaluate a claim of inability to present a complete defense

14  based on the exclusion of evidence, the Court must be mindful that state

15  evidentiary rulings are not cognizable in a federal habeas proceeding unless

16  constitutional rights are affected.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991);

17  Rivera v. Illinois, 556 U.S. 148, 158-60 (2009) (mere errors in application of state

18  law not cognizable on habeas review).  The right to present relevant evidence may,

19  in appropriate circumstances, bow to accommodate other legitimate interests in the

20  criminal trial process.  See Holmes v. South Carolina, 547 U.S. 319, 326-27

21  (2006) ("While the Constitution . . . prohibits the exclusion of defense evidence

22  under rules that serve no legitimate purpose or that are disproportionate to the

23  ends they are asserted to promote, well-established rules of evidence permit trial

24  judges to exclude evidence if its probative value is outweighed by certain other

25  _____

26         [9]California Evidence Code section 352 provides:  "The court in its discretion may exclude
27  evidence if its probative value is substantially outweighed by the probability that its admission
    will (a) necessitate undue consumption of time or (b) create substantial danger of undue
28  prejudice, of confusing the issues, or of misleading the jury."

factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. . . . [T]he Constitution permits judges to exclude evidence that is repetitive . . . , only marginally relevant, or poses an undue risk of harassment, prejudice, [or] confusion of the issues.") (internal citations, brackets and quotation marks omitted); United States v. Scheffer, 523 U.S. 303, 308, 315 (1998) (defendant's right to present evidence in his defense "not unlimited" but rather is subject to reasonable evidentiary and procedural restrictions; exclusion pursuant to state evidentiary rule unconstitutional only where it "significantly undermined fundamental elements of the defendant's defense"); Montana v. Egelhoff, 518 U.S. 37, 42 (1996) ("[A]ny number of familiar and unquestionably constitutional evidentiary rules . . . authorize the exclusion of relevant evidence."); Michigan v. Lucas, 500 U.S. 145, 149 (1991) (right to present relevant testimony may bow to accommodate other legitimate interests) (citations, quotations, and internal quotations omitted).

Even if a trial court's exclusion of evidence amounts to constitutional error, a habeas petitioner is not entitled to habeas relief unless such error had a "substantial and injurious effect" upon the verdict.  See Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)); see also Fry v. Pliler, 551 U.S. 112, 119 (2007) (harmless-error standard applied in federal habeas review of trial-type errors); Bains v. Cambra, 204 F.3d 964, 976-78 (9th Cir.) (Brecht standard applies to federal habeas review of all trial-type errors, regardless of the standard applied in state court), cert. denied, 531 U.S. 1037 (2000).

### 3.    Analysis

The Court of Appeal reasonably rejected petitioner's instant challenge to the exclusion of the "impeachment" evidence in issue and affirmed the trial court's determination under California Evidence Code section 352, that such evidence should be excluded.

///

1    First, as the Court of Appeal recognized, evidence regarding the detectives'

2  statements, testimony, and conduct in Rodriguez's case had little probative value.

3  The case involving Rodriguez occurred two years prior to petitioner's trial and

4  involved discrete events unrelated to petitioner's case.[10]   Although petitioner

5  alleges that Rodriguez would have testified that the detectives fabricated evidence

6  in such matter, neither detective was charged or convicted of any offense related to

7  such assertedly fraudulent conduct.  Nor is there an indication that Rodriguez

8  pursued administrative or civil relief or that such detectives were found to have

9  committed misconduct in any administrative or civil proceeding.  Indeed,

10  petitioner did not even have certified transcripts of the assertedly fabricated

11  testimony in issue and instead was relying on the testimony of Rodriguez – "a

12  witness that may have [had] an axe to grind because he was charged with a crime."

13  (RT 1276, 1326).  In short, this Court agrees with the trial court's statement that

14

15    _____

    [10]As summarized by the trial court, petitioner's offer of proof was as follows:

16

17    First, in a case that they [Detectives Sloan and House] had investigated
    approximately two years ago not involving this defendant or the incidents
18    involved in this case wherein in that case a certain search warrant was executed
    and each detective, both Sloan and House, allegedly generated a certain written
19    report regarding that case, in that other case, according to the offer of proof,
    neither detective; that is House or Sloan reflected in their said written report any
20    statement made to them by the arrestee and the defendant, a certain Mr.
    Rodriguez.
21

22    Again, according to the offer of proof, the detectives allegedly testified in
    that other matter that this Mr. Rodriguez had told them that he had sole access to a
23    certain shed where drugs were found under that search warrant.  That's what they
    testified; that is Sloan and House, in the other trial that was told to them by this
24    Mr. Rodriguez.
25

26    Defendant now wants Mr. Rodriguez to come into this court and testify
    that he made no such statement of admission regarding having sole access to that
27    shed.

28  (RT 1325-26).

the admission of Rodriguez's testimony was "only remotely worthy of being considered" and "at best" presented a "collateral credibility issue."  (RT 1327).

Second, this Court likewise agrees with the Court of Appeal's assessment that the trial court properly excluded such evidence under California Evidence Code section 352.  See supra note 9.  As the trial court noted:  "To get into that area is going to take an awful long time. . . . I really think under 352 we're opening up some sort of can of worms, that it becomes very time-consuming to go into that issue, particularly with [the prosecutor] having the right to attempt to rehabilitate him, to get the information."  (RT 1264, 1265-66).  "To permit this line of questioning . . . would require undue time, a consumption of undue time. . . The court finds that it's more prejudicial than probative, more time-consuming as well as confusing to the jury . . . ."  (RT 1327-28).  It likewise appears to this Court that the proffered evidence had tangential relevance at best, and if permitted, would have resulted in a mini-trial on the events involving Rodriguez, would have unnecessarily delayed the proceedings, would have consumed an undue amount of time, and would have distracted and confused the jury regarding its assessment of the case at hand.

Finally, this Court concludes that the exclusion of the evidence in issue neither deprived petitioner of his rights to due process or confrontation, nor had a substantial and injurious impact on the outcome of these proceedings.  As the Court of Appeal recognized, and contrary to petitioner's suggestion otherwise, petitioner's convictions did not rest on the detectives' presentation of, for example, the statement made by Duran as the recording thereof was played for the jury, effectively placing the jurors in a position to determine for themselves whether such witness was telling the truth.  Moreover, petitioner's trial counsel otherwise engaged in a vigorous cross-examination of Sloan and House, exposing certain inconsistencies/anomalies and affording petitioner's counsel a basis to suggest, as he did in closing argument, that the officers fabricated evidence against

1   petitioner.  (RT 754-56 [House], 958-64 [Sloan], 1253-63 [Sloan], 1278-79

2   [Sloan], 1355-83 [House], 1397-1400 [House], 1832-53 [closing]).  Given all of

3   the evidence presented in the case – the testimony of the victim, the testimony of

4   J.V. who heard the gunshots and saw the van petitioner was driving leave the

5   crime scene, the testimony and prior statements of Duran who identified petitioner

6   as the driver of the van on the night of the robbery, the presence of petitioner's

7   DNA on the gun used in the crimes, and petitioner's flight from the police –

8   petitioner fails to demonstrate that the exclusion of the tangential and likely time-

9   consuming evidence regarding Rodriguez's case – deprived him of the opportunity

10  to present a meaningful defense or to confront House and Sloan as witnesses – or

11  that it had a substantial and injurious impact on the outcome.

12      In short, the Court of Appeal's rejection of this claim was not contrary to, or

13  an unreasonable application of, clearly established federal law and was not based

14  on an unreasonable determination of the facts in light of the evidence presented.

15  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

16  **C.     Petitioner Is Not Entitled to Federal Habeas Relief on Claim 3 –**

17  **Confrontation Clause**

18      Petitioner contends that the trial court violated his confrontation rights when

19  it determined that Laumua was unavailable based on the invocation of his Fifth

20  Amendment privilege against self-incrimination, and then allowed Laumua's

21  preliminary hearing testimony and evidence of Laumua's prior inconsistent

22  statements which were introduced at the preliminary hearing to be admitted at

23  trial.  (Petition at 5-6, 28-34; Traverse at 28-32).[11]  The California Court of Appeal

24  – the last state court to issue a reasoned decision on the matter – rejected this claim

25  ///

26  _____

27      [11]The preliminary hearing was held on May 2, 2008 under a different case number.  (RT
    154, 318).  That original case was dismissed and refiled, and petitioner waived his right to a
28  preliminary hearing in the refiled case.  (RT 154).

on its merits.  (Lodged Doc. 6 at 8-12).  Petitioner is not entitled to federal habeas relief on this claim.

### 1.    **Additional Pertinent Facts**[12]

When Laumua invoked his Fifth Amendment privilege against self-incrimination, the trial court found that "if he were to testify in this case regarding the issue of gang affiliation or membership, it could tend to incriminate him" in an unrelated criminal case, which contained a gang enhancement.  As a result, the court found Laumua to be an unavailable witness.  The trial court then allowed Laumua's testimony at the preliminary hearing to be read to the jury. Defense counsel made a hearsay objection and cited to Crawford v. Washington, 541 U.S. 36, 57 (2004).  The prosecutor argued that the charges to be tried were the same as at the preliminary hearing so the issues and the elements were identical.  Further, Laumua testified over two days at the preliminary hearing and was subject to cross-examination by petitioner's trial counsel and another "seasoned attorney" for the co-defendant.  The trial court found Crawford to be inapplicable "based upon the fact that the charges are the same, [and] that Mr. Laumua was cross-examined by defense counsel . . . "  The trial court also allowed the impeachment testimony by Laumua's mother and Detective House and the recorded interviews of Laumua with the police to be presented to the jury under California Evidence Code section 1294.[13]

---

[12]Unless otherwise indicated by citations to the record, the facts set forth are drawn from the California Court of Appeal's decision on direct appeal.  (Lodged Doc. 6 at 4-5).  Such factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

[13]California Evidence Code section 1294 provides:

(a) The following evidence of prior inconsistent statements of a witness properly admitted in a preliminary hearing or trial of the same criminal matter pursuant to Section 1235 is not made inadmissible by the hearsay rule if the witness is unavailable and former testimony of the witness is admitted pursuant to

(continued...)

### 2.    Pertinent Law

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Crawford v. Washington, 541 U.S. 36, 42 (2004); Maryland v. Craig, 497 U.S. 836, 844 (1990).  The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.  Craig, 497 U.S. at 845.  The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.  Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (citations and quotation marks omitted).

"'The Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."'  When a witness gives 'testimony that is marred by forgetfulness, confusion, or evasion. . . . the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination.'"  Walters v. McCormick, 122 F.3d 1172, 1175 (9th Cir. 1997) (citations omitted), cert. denied 523 U.S. 1060 (1998).

The Confrontation Clause prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify

[13](...continued)
Section 1291:  [¶] (1) A video recorded statement introduced at a preliminary hearing or prior proceeding concerning the same criminal matter.  [¶] (2) A transcript, containing the statements, of the preliminary hearing or prior proceeding concerning the same criminal matter.  [¶] (b) The party against whom the prior inconsistent statements are offered, at his or her option, may examine or cross-examine any person who testified at the preliminary hearing or prior proceeding as to the prior inconsistent statements of the witness.

and the defendant had a prior opportunity for cross examination.  Crawford, 541 U.S. at 54-55, 59; Davis v. Washington, 547 U.S. 813, 821 (2006).

A Confrontation Clause claim is subject to harmless error analysis.  See Winzer v. Hall, 494 F.3d 1192, 1201 (9th Cir. 2007) (citing Brecht, 507 U.S. 619). "Under this standard, habeas petitioners . . . are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637.  Actual prejudice, in turn, is demonstrated by the petitioner "if the error in question had a 'substantial and injurious effect or influence in determining the jury's verdict.'"  Winzer, 494 F.3d at 1201 (quoting Brecht).  Factors to be considered in assessing whether an Confrontation Clause violation had a substantial and injurious effect on the outcome, include the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted and the overall strength of the prosecution's case.  See Van Arsdall, 475 U.S. 673, 684 (1986) (considering such factors in assessing on direct appeal whether Confrontation Clause error harmless beyond a reasonable doubt); Merolillo v. Yates, 663 F.3d 444, 455-58 (9th Cir. 2011) (applying Van Arsdall factors in assessing on habeas review whether Confrontation Clause error had substantial and injurious effect on outcome), cert. denied, 133 S. Ct. 102 (2012).

### 3.    Analysis

#### a.    Admission of Laumua's Preliminary Hearing Testimony

The Court of Appeal reasonably determined that the admission of Laumua's preliminary hearing testimony at petitioner's trial did not violate the Confrontation Clause.  (Lodged Doc. 6 at 7-10).

///

1    First, the record amply supports the determination that Laumua was

2    unavailable – a necessary predicate to the admission of his preliminary hearing

3    testimony under the Confrontation Clause.  The Fifth Amendment provides that

4    "[n]o person . . . shall be compelled in any criminal case to be a witness against

5    himself."  U.S. Const. amend. V.  The privilege "must be accorded liberal

6    construction" and applies both to "answers that would in themselves support a

7    conviction" but also to "those which would furnish a link in the chain of evidence

8    needed to prosecute the claimant."  Hoffman v. United States, 341 U.S. 479, 486

9    (1951).  It is for the court, not the witness, to determine whether the privilege may

10   be invoked.  Id.  It "must be confined to instances where the witness has

11   reasonable cause to apprehend danger from a direct answer."  Id.

12   "To sustain the privilege, it need only be evident from the implications of

13   the question, in the setting in which it is asked, that a responsive answer to the

14   question or an explanation of why it cannot be answered might be dangerous

15   because injurious disclosure could result."  Id. at 486-87.  It is only when it is

16   "perfectly clear, from a careful consideration of all the circumstances in the case,

17   that the witness is mistaken, and that the answer(s) cannot possibly have such

18   tendency to incriminate" that the claim of privilege should be rejected.  Id. at 488.

19   Here, the trial court properly sustained Laumua's privilege because had he

20   testified at trial, it could not find that the answers sought could not possibly have a

21   tendency to incriminate him.  Hoffman, 341 U.S. at 488.

22   Having found that Laumua was entitled to invoke his Fifth Amendment

23   right not to testify, the court also properly determined that he was "unavailable" to

24   testify at petitioner's trial.  See California v. Green, 399 U.S. 149, 168 n.17 (1970)

25   (defendant who invokes the Fifth Amendment right against compelled

26   self-incrimination is unavailable for purposes of the Confrontation Clause);

27   Padilla v. Terhune, 309 F.3d 614, 618 (9th Cir. 2002) (assertion of Fifth

28   Amendment privilege makes witness legally unavailable); see also Whelchel v.

24

1    <u>Washington</u>, 232 F.3d 1197, 1204 (9th Cir. 2000) (finding witness legally

2    unavailable where he refused to testify based on privilege against

3    self-incrimination).

4         Second, the Court of Appeal reasonably determined that petitioner had

5    sufficient opportunity and motive to cross-examine during the preliminary hearing,

6    the second necessary predicate to admit Laumua's testimony under the

7    Confrontation Clause. (Lodged Doc. 6 at 9-10). As such court explained:

8              At the preliminary hearing, [petitioner] was present and

9         represented by counsel. He was given the opportunity to, and did,

10        cross-examine Laumua, whose testimony lasted two days. There is

11        no indication the cross-examination was limited in time or in scope.

12        Further, [petitioner's] interest in cross-examining Laumua at the

13        preliminary hearing was very similar, if not identical, to what his

14        motive at trial would have been, i.e., to discredit his account of the

15        shooting and to bolster his testimony that he was under the influence

16        of morphine at the time of his interviews with the police. We reject

17        [petitioner's] contention that his interest and motive for thorough

18        cross-examination was much less than at trial because the preliminary

19        examination is conducted as a rather perfunctory uncontested

20        proceeding . . . . As the California Supreme Court has previously

21        held, as long as a defendant was provided the opportunity for

22        cross-examination, the admission of preliminary hearing testimony

23        under [California] Evidence Code section 1291[14] does not offend

24        ──────────────

25    [14]California Evidence Code section 1291 governs the admissible of former testimony and

26    provides:

27        (a) Evidence of former testimony is not made inadmissible by the hearsay rule if
         the declarant is unavailable as a witness and:  [¶]  (1) The former testimony is

28                                                              (continued...)

                                    25

the confrontation clause of the federal Constitution simply because
the defendant did not conduct a particular form of cross-examination
that in hindsight might have been more effective.  [Citations.]

We also reject [petitioner's] contention that he could not
effectively cross-examine Laumua because he "denie[d] ever having
said anything ."  The opportunity for cross-examination satisfies
constitutional requirements notwithstanding a witness's memory loss,
whether feigned or real, about the facts related to the hearsay
statement.  [Citations.]

(Lodged Doc. 6 at 9-10) (citations and internal quotation marks omitted).  The
Court of Appeal's findings are reasonably supported by the record and its analysis
is not objectively unreasonable.  Because Laumua was unavailable at trial and
petitioner had a prior opportunity to cross-examine him, the admission of his
preliminary hearing testimony did not violate the Confrontation Clause.[15]

---

[14](...continued)
offered against a person who offered it in evidence in his own behalf on the
former occasion or against the successor in interest of such person; or [¶]
(2) The party against whom the former testimony is offered was a party to the
action or proceeding in which the testimony was given and had the right and
opportunity to cross-examine the declarant with an interest and motive similar to
that which he has at the hearing.

(b) The admissibility of former testimony under this section is subject to the
same limitations and objections as though the declarant were testifying at the
hearing, except that former testimony offered under this section is not subject to:
[¶] (1) Objections to the form of the question which were not made at the time
the former testimony was given.  [¶]  (2) Objections based on competency or
privilege which did not exist at the time the former testimony was given.

[15]To the extent petitioner suggests that the trial court should have simply limited the
scope of Laumua's testimony so as to preclude reference to Laumua's pending criminal matter
(Traverse at 29), i.e., that it should not have sustained Laumua's privilege on a blanket basis,
petitioner is incorrect.  In a case where a defendant seeks to cross-examine a witness, and the
witness has invoked the Fifth Amendment, claiming that his testimony might incriminate him on
(continued...)

1    In sum, the Court of Appeal's rejection of this Confrontation Clause claim

2    was not contrary to, and did not involve an unreasonable application of clearly

3    established federal law and was not based on an unreasonable determination of the

4    facts in light of the evidence presented.  Accordingly, petitioner is not entitled to

5    habeas relief on this claim.

6               **b.    Admission of Impeachment Testimony**

7    Petitioner also contends the impeachment testimony presented at the

8    preliminary hearing by Laumua's mother and Detective House as well as the

9    recordings of Laumua's interviews with the police were erroneously admitted at

10   trial.  The California Court of Appeal rejected this claim, finding that such

11   evidence was properly admitted under California Evidence Code section 1294 (see

12   supra note 13), that its admission did not run afoul of the Confrontation Clause

13   because petitioner's counsel had a fair opportunity to question the declarants at the

14   preliminary hearing, and that, in any event, any error in admitting such evidence

15   was harmless.  (Lodged Doc. 6 at 10-12).

16   As to harmless error, the Court of Appeal explained:

17   [T]he evidence complained of was cumulative to other evidence

18   presented at trial.  In particular, J.V. testified that he heard gunshots,

19   saw a dark van drive off and took down a partial license plate.  The

20   van which [petitioner] was driving at the time he was apprehended

21   matched the description and the partial plate.  Also, Detective House

22   testified at trial to the motive a Hawaiian Gardens gang member

23

24   ───────────────

          [15](...continued)

25   other "collateral" matters, the United States Supreme Court has never made a distinction between
     allowing cross-examination on "non-collateral" matters, *i.e.*, matters within the scope of direct

26   examination, and barring cross-examination on "collateral" matters.  See Arredondo v. Ortiz, 365

27   F.3d 778, 783 (9th Cir. 2004) (citing Williams v. Borg, 139 F.3d 737, 741 (9th Cir. 1998)
     (rejecting a defendant's attempt to "elevate to a constitutional level the distinction between

28   cross-examination on collateral and non-collateral matters"), cert. denied, 543 U.S. 892 (2004).

would have to shoot [Laumua], a "high value target" from the Artesia

gang.  Most significantly, the gun used to shoot Laumua was

recovered from the van, and [petitioner's] DNA was found on it.

(Lodged Doc. 6 at 12).  Where a state court has determined that a constitutional

error – such as a Confrontation Clause violation – is harmless, a federal habeas

court may not grant relief unless the error had a substantial and injurious effect on

the outcome.  See Merolillo, 663 F.3d at 454-55.  As this Court agrees with the

Court of Appeal's findings and analysis and similarly concludes, after considering

the Van Arsdall factors delineated above, that the admission at trial of evidence of

Laumua's prior inconsistent statements which were introduced at the preliminary

hearing did not have a substantial and injurious impact on the outcome of this

matter, petitioner is not entitled to federal habeas relief on this claim.[16]

**D.    Petitioner Is Not Entitled to Federal Habeas Relief on Claim 4 –
Admission of Reference to Petitioner's "Pattern of Criminal Gang
Activity" – Related Ineffective Assistance of Counsel**

Petitioner argues that the trial court violated his due process right to a fair

trial by admitting certain evidence about his criminal history – namely Detective

House's testimony that petitioner had engaged in "a pattern of criminal gang

activity," and that counsel's failure to object to such reference constituted

ineffective assistance of counsel.  (Petition at 6, 35-40; Traverse at 33-38).  The

California Court of Appeal – the last state court to issue a reasoned decision on

this claim – rejected the evidentiary claim on procedural grounds and the related

ineffective assistance of counsel claim on the merits.  (Lodged Doc. 6 at 12-16).

///

///

---

[16]In light of such determination, the Court need not and does not address the parties'
remaining other contentions regarding the admission of the Laumua preliminary hearing
impeachment evidence.

1   Petitioner is not entitled to federal habeas relief on such claims.[17]   For ease of

2   analysis, this Court first addresses petitioner's ineffective assistance of counsel

3   claim and then addresses his evidentiary claim.

4         **1.**    **Additional Pertinent Facts**[18]

5       As noted above, count 4 of the Information charged petitioner with the

6   crime of street terrorism – a violation of California Penal Code section 186.22(a)

7   that provides:

8       Any person who actively participates in any criminal street gang with

9       knowledge that its members engage in or have engaged in a pattern of

10      criminal gang activity, and who willfully promotes, furthers, or assists

11      in any felonious criminal conduct by members of that gang, shall be

12      punished by imprisonment in a county jail for a period not to exceed

13      one year, or by imprisonment in the state prison for 16 months, or two

14      or three years.

15      Petitioner contends that the trial court erred when it admitted evidence of

16  his prior criminal history to prove gang involvement under section 186.22.

17  Specifically, petitioner takes issue with the following testimony from Detective

18  House:

19

20      [17]Although respondent addresses petitioner's instant claims on the merits, respondent also

21  contends that the evidentiary claim has been procedurally defaulted.  (Answer at 35, 38-40).  The

22  Court need not decide if such claim is procedurally barred as the Court concludes, based upon a

    *de novo* review, that the claim fails on the merits.  See Franklin v. Johnson, 290 F.3d 1223, 1232

23  (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of

24  habeas petitions if they are, on their face and without regard to any facts that could be developed

below, clearly not meritorious despite an asserted procedural bar") (citing Lambrix v. Singletary,

25  520 U.S. 518, 525 (1997)); see also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.) ("judicial

economy sometimes dictates reaching the merits if the merits are easily resolvable against a

26  petitioner while the procedural bar issues are complicated"), cert. denied, 528 U.S. 846 (1999).

27      [18]Unless otherwise indicated by citations to the record, the facts set forth are drawn from

the California Court of Appeal's decision on direct appeal.  (Lodged Doc. 6 at 12-13).  Such

28  factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

Q:    Any other reasons why you think he's a gang member besides the tattoo?

A:    Yes.

Q:    What?

A:    First of all, the pattern of criminal activity that he's been involved in over the past several years.  The gang records that we have on the defendant, although there are not many of them.  There is one from a field interview report card from 2002 where he admitted his membership, but he also was documented to be with several members of Varrio Hawaiian Gardens that I'm familiar with.

House then identified the five Hawaiian Gardens gang members who were with petitioner in 2002 at the time the field interview report card was completed. House also testified that a nine-millimeter pistol and some marijuana were found with the group.

Prior to trial, petitioner's counsel declined to stipulate to knowledge of the gang's activities for purposes of the street terrorism charge during discussions with the trial court.  Petitioner's counsel also objected when the prosecutor indicated he intended to present petitioner's prior criminal convictions to prove such knowledge.  The trial court reserved ruling on the issue, although it indicated that it believed the prosecution had the right to present whatever evidence it thought necessary to establish knowledge under the statute.

At trial, the court never ruled on the issue and petitioner's counsel did not move to strike Detective House's answer.

## 2.    Petitioner Is Not Entitled to Federal Habeas Relief on His Ineffective Assistance of Trial Counsel Claim

Petitioner argues that his trial counsel was ineffective in failing to object to, or to seek to strike House's reference to his "pattern of criminal activity."   The Sixth Amendment guarantees the effective assistance of counsel at trial.  <u>See</u>

Strickland v. Washington, 466 U.S. 668, 686 (1984).  To establish ineffective assistance by his trial counsel, petitioner must demonstrate both that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.  Id. at 688-93; see also Knowles v. Mirzayance, 556 U.S. 111, 124 (2009) ("Strickland requires a defendant to establish deficient performance and prejudice"); Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (the Sixth Amendment right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense").  As both prongs of the Strickland test must be satisfied to establish a constitutional violation, failure to satisfy either prong requires that an ineffective assistance claim be denied.  See Strickland, 466 U.S. at 697 (no need to address deficiency of performance if prejudice is examined first and found lacking); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the Strickland test obviates the need to consider the other.").

Where, as here, there has been a state court decision rejecting a Strickland claim, review is "doubly deferential."  Mirzayance, 556 U.S. at 123 (citation omitted); 28 U.S.C. § 2254(d).  A state court's decision rejecting a Strickland claim is entitled to "a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."  Richter, 562 U.S. at 101; see also Padilla v. Kentucky, 559 U.S. 356 (2010) (noting, "There is no reason to doubt that lower courts – now quite experienced with applying Strickland – can effectively and efficiently use its framework to separate specious claims from those with substantial merit.").  "The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  Richter, 562 U.S. at 101; 28 U.S.C. § 2254(d).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Richter, 562 U.S. at 102 (citation omitted).  The range of reasonable Strickland applications is "substantial."  Richter, 562 U.S. at 88-89; 28 U.S.C. § 2254(d)(1).

1    Here, the Court of Appeal rejected petitioner's instant ineffective assistance

2    of counsel claim, finding, given the absence of any indication as to petitioner's

3    counsel's reason for not objecting, that petitioner had failed to demonstrate his

4    counsel was deficient and that, in any event, petitioner had failed to show a

5    reasonable probability that, but for counsel's failure to object, the result of the

6    proceeding would have been different.  (Lodged Doc. 6 at 14-16).  As to the latter

7    point, the Court of Appeal explained:

8        The comment was made in passing, with no specific testimony about

9        [petitioner's] prior convictions.  Indeed, the prosecutor did not follow

10       up and question Detective House about [petitioner's] "pattern of

11       criminal activity."  Neither did he mention it in his closing arguments.

12       Instead, the line of questioning related specifically to why House

13       believed [petitioner] was a gang member.  To that end, House

14       supported his "pattern of criminal activity" comment with testimony

15       about [petitioner's] involvement with other Hawaiian Gardens gang

16       members in 2002 during which he admitted his gang membership and

17       was discovered with a nine-millimeter pistol and marijuana.  Further,

18       the jury knew [petitioner] had been convicted of at least one prior

19       felony, as he stipulated to it for purposes of count 2, possession of a

20       firearm by a felon.  [Citation.]  [¶]  We find no prejudice resulted

21       from Detective House's passing comment.   [Citation].

22   (Lodged Doc. 6 at 15-16) (citations omitted).  This Court agrees with the findings

23   and analysis of the Court of Appeal and sees no basis upon which to afford

24   petitioner federal habeas relief on this claim.

25       In sum, the California Court of Appeal's rejection of this ineffective

26   assistance of counsel claim was not contrary to, or an unreasonable application of

27   clearly established federal law.  Nor was it based on an unreasonable

28   ///

determination of the facts in light of the evidence presented.  Accordingly, petitioner is not entitled to federal habeas relief on this basis.

### 3.     The Admission of the Referenced Testimony Does Not Merit Federal Habeas Relief

Petitioner argues that the admission of House's testimony was in error because it lacked probative value and was extremely prejudicial, contending that his prior convictions included no gang findings and there was no evidence to demonstrate that those convictions displayed gang knowledge or connection

First, to the extent petitioner argues that admission of the challenged evidence violated the California Evidence Code or any other state law, his claim is not cognizable on federal habeas review.  See Estelle v. McGuire, 502 U.S. at 67-68 (correctness of state evidentiary rulings presenting only issues of state law not cognizable on federal habeas corpus review); see also 28 U.S.C. § 2254(a) (federal habeas corpus relief may be granted "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."); Smith v. Phillips, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution.").

Second, to the extent predicated on a violation of federal due process, petitioner's claim still does not merit relief.  "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), as amended on reh'g, 421 F.3d 1154 (9th Cir. 2005).  "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir.), cert denied, 516 U.S. 1017 (1995) (citation omitted).  The "[a]dmission of evidence violates due process only if there are *no* permissible inferences the jury may draw from it." Boyde, 404 F.3d at 1172 (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991))

1    (internal quotation marks omitted; emphasis in original).  Here, as noted above,

2    count 4 charged petitioner with street terrorism which required proof that

3    petitioner actively participated in a criminal street gang with knowledge that its

4    members engage in or have engaged in a "pattern of criminal gang activity."

5    (Lodged Doc. 6 at 12-13).  A "pattern of criminal gang activity," in turn, may be

6    established in part by a gang member's commission of two or more predicate

7    offenses – including assault with a deadly weapon and prohibited possession of a

8    firearm.  Cal. Penal Code § 186.22(e).  As noted above, petitioner had previously

9    been convicted of possession of a firearm by a felon and assault with a deadly

10   weapon.  (CT 201-02).  While House did not describe such prior offenses, they

11   nonetheless were relevant to, and supported his opinion that petitioner had

12   engaged in a "pattern of criminal activity" which, in turn was probative of whether

13   petitioner was a member of a gang and guilty of the street terrorism crime.  As

14   there was a permissible inference the jury could draw from such testimony, the

15   admission thereof was not constitutionally erroneous.

16          Finally, even if the admission of such evidence was improper, it appears to

17   the Court that any error was harmless.  Habeas relief is available for evidentiary

18   error only when a petitioner demonstrates that he has suffered prejudice as a result

19   of an alleged due process violation – that is, the error had "'a substantial and

20   injurious effect' on the verdict."  Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir.)

21   (quoting Brecht, 507 U.S. at 623), cert. denied, 534 U.S. 905 (2001).  No such

22   showing has been made here.  Indeed, for the same reasons that the Court of

23   Appeal concluded that petitioner was not prejudiced by his counsel's failure to

24   object thereto (Lodged Doc. 6 at 15-16), this Court concludes that the admission

25   of such evidence did not have a substantial and injurious impact on the outcome.

26   Accordingly, petitioner is not entitled to federal habeas relief on this claim.

27   ///

28   ///

1    **E.**    **Petitioner Is Not Entitled to Federal Habeas Relief on Claim 5 –**

2    **Admission of Gang Expert Opinion**

3    Petitioner argues that the trial court improperly permitted the gang expert to

4    offer an opinion regarding petitioner's specific intent, effectively reducing the

5    prosecution's burden of proof and denying petitioner a fair trial.  (Petition at 6, 41-

6    42; Traverse at 39-42).  The California Court of Appeal – the last state court to

7    issue a reasoned decision addressing this claim – rejected it on the merits.

8    (Lodged Doc. 6 at 16-18).  Petitioner is not entitled to federal habeas relief on this

9    claim.

10    First, to the extent petitioner may claim that the admission of the gang

11    expert's testimony violated California law, petitioner is not entitled to habeas

12    relief.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010) ("it is only noncompliance

13    with *federal* law that renders a State's criminal judgment susceptible to collateral

14    attack in the federal courts") (original emphasis); Estelle, 502 U.S. at 67-68 (mere

15    errors in the application of state law are not cognizable on federal habeas review).

16    The Court of Appeal, relying on the California Supreme Court's decision in

17    People v. Gonzalez, 38 Cal. 4th 932, 946-47 & n.3 (2006), cert. denied, 549 U.S.

18    1140 (2007), found that the testimony was proper.  (Lodged Doc. 6 at 16-18).  It is

19    not for this Court to reexamine the Court of Appeal's determination on this state

20    law issue.  See Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009) ("we have

21    repeatedly held that it is not the province of a federal habeas court to reexamine

22    state-court determinations on state-law questions") (citation and internal

23    quotations omitted); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's

24    interpretation of state law, including one announced on direct appeal of the

25    challenged conviction, binds a federal court sitting in habeas corpus"); see also

26    Butler v. Curry, 528 F.3d 624, 642 (9th Cir.) ("We are bound to accept a state

27    court's interpretation of state law, except in the highly unusual case in which the

28    'interpretation is clearly untenable and amounts to a subterfuge to avoid federal

35

1  review' of a constitutional violation.") (citation omitted), cert. denied, 555 U.S.

2  1089 (2008).  In petitioner's case, the Court of Appeal's decision is not

3  inconsistent with prior California Supreme Court law and there is nothing to

4  suggest that it is "merely subterfuge."  Id.

5      Second, to the extent petitioner contends that the admission of the gang

6  expert's testimony deprived him of due process and a fair trial, petitioner's claim

7  lacks merit.  Petitioner essentially alleges that the introduction of the expert's

8  testimony improperly invaded the province of the jury and relieved the prosecution

9  of its burden of proof because the expert purportedly opined on an ultimate issue

10  to be decided by the jury – his specific intent.  Petitioner has failed to demonstrate

11  a violation of any clearly established principle of due process.

12      "'The admission of evidence does not provide a basis for habeas relief

13  unless it rendered the trial fundamentally unfair in violation of due process.'"

14  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting Johnson v.

15  Sublett, 63 F.3d at 930); see also Jammal, 926 F.2d at 919 (proper analysis on

16  federal habeas review is "whether the admission of the evidence so fatally infected

17  the proceedings as to render them fundamentally unfair").  "The Supreme Court

18  has made very few rulings regarding the admission of evidence as a violation of

19  due process."  Holley, 568 F.3d at 1101.  "Although the Court has been clear that a

20  writ should be issued when constitutional errors have rendered the trial

21  fundamentally unfair [citation], it has not yet made a clear ruling that admission of

22  irrelevant or overly prejudicial evidence constitutes a due process violation

23  sufficient to warrant issuance of the writ."  Id.

24      Furthermore, the United States Supreme Court has not held "that the

25  Constitution is violated by the admission of expert testimony concerning an

26  ultimate issue to be resolved by the trier of fact."  Moses v. Payne, 555 F.3d 742,

27  761 (9th Cir. 2009) ("That the Supreme Court has not announced such a holding is

28  not surprising, since it is well established that expert testimony concerning an

1   ultimate issue is not *per se* improper.") (internal citations and quotations

2   omitted)); see also Briceno v. Scribner, 555 F.3d 1069, 1078 (9th Cir. 2009)

3   (noting that Moses forecloses challenge that gang expert testimony should have

4   been excluded as pertaining to ultimate issue for the jury).  Accordingly, petitioner

5   cannot demonstrate that the Court of Appeal's rejection of this claim was contrary

6   to, or an unreasonable application of, any clearly established federal law as

7   determined by the United States Supreme Court.  See 28 U.S.C. § 2254(d); see

8   also Mirzayance, 556 U.S. at 122 ("it is not an unreasonable application of clearly

9   established Federal law for a state court to decline to apply a specific legal rule

10  that has not been squarely established by this Court") (citations and internal

11  quotations omitted); Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because

12  our cases give no clear answer to the question presented, . . . it cannot be said that

13  the state court unreasonably applied clearly established Federal law.") (citation,

14  internal brackets and quotations omitted).

15          Third, in any event, petitioner's contention that the expert usurped the jury's

16  fact-finding role, assertedly by opining on an ultimate issue for the jury, does not

17  suggest petitioner's trial was fundamentally unfair.  Under California law, expert

18  testimony is admissible on a subject "sufficiently beyond common experience that

19  the opinion of an expert would assist the trier of fact."  See Briceno, 555 F.3d at

20  1077 (citation and internal quotations omitted); Cal. Evid. Code § 801(a).

21  "'Testimony in the form of an opinion that is otherwise admissible is not

22  objectionable because it embraces the ultimate issue to be decided by the trier of

23  fact.'  The objection that the opinion of an expert coincides with the 'ultimate

24  issue' in the case is untenable."  People v. Roberts, 184 Cal. App. 4th 1149, 1193

25  (2010) (citations omitted); Cal. Evid. Code § 805.

26          Specifically, in the gang context, an expert may testify about whether a

27  defendant acted for the benefit of a gang, even though the question is an ultimate

28  factual issue in the case.  See, e.g., People v. Xue Vang, 52 Cal. 4th 1038, 1046,

1048-49 (2011) (expert properly could opine whether an assault was committed

for the benefit of a gang based on hypothetical questions tracking the evidence in

the case; a prosecutor's hypothetical questions have "to be based on what the

evidence showed *these* defendants did, not what someone else might have done")

(emphasis original);[19] People v. Valdez, 58 Cal. App. 4th 494, 508-09 (1997) (trial

court properly admitted expert witness' opinion that individual participants in

gang-related shooting acted for the benefit of a gang); People v. Gardeley, 14 Cal.

4th 605, 618-19 (1996) (jury could reasonably find that assault was committed for

the benefit of, at the direction of, or in association with criminal street gang based

on gang expert's testimony that hypothetical question which included facts of the

offense charged in petitioner's case described "a 'classic' example of gang-related

activity"), cert. denied, 522 U.S. 854 (1997).

A gang expert may render opinion testimony in response to a hypothetical

question where, as here, the question posed is "rooted in facts shown by the

evidence." See People v. Gardeley, 14 Cal. 4th at 618.  "[I]t is not a legitimate

objection that the questioner failed to disguise the fact the question was based on

the evidence."  People v. Xue Vang, 52 Cal. 4th at 1052.

In petitioner's case, while the prosecutor posed a hypothetical question

based on the specific evidence adduced at petitioner's trial, the expert did not

opine that petitioner actually committed the crimes or harbored a particular intent.

---

[19]The Xue Vang Court explained:

[N]o statute prohibits an expert from expressing an opinion regarding whether a
crime was gang related.  Indeed, it is settled that an expert may express such an
opinion.  To the extent the expert may not express an opinion regarding the actual
defendants, that is because the jury can determine what the defendants did as well
as an expert, not because of a prohibition against the expert opining on the entire
subject.  Using hypothetical questions is just as appropriate on this point as on
other matters about which an expert may testify.

People v. Xue Vang, 52 Cal. 4th at 1053.

1  Compare <u>Briceno</u>, 555 F.3d at 1078-79 (finding expert testimony did not establish

2  petitioner's specific intent in committing his crimes).  As the hypothetical

3  questioning was based on the specific evidence in petitioner's case, and did not

4  involve an opinion as to whether the evidence had established the facts in the

5  hypothetical, the questioning was not fundamentally unfair.  <u>See</u> <u>People v. Xue</u>

6  <u>Vang</u>, 52 Cal. 4th at 1048.

7         This conclusion is supported by the trial court's admonition to the jury that

8  it would be the jury who would ultimately decide the facts and whether any

9  assumption in the hypothetical questioning had been established.  (CT 113).  The

10  jury is presumed to have followed its instructions.  <u>Weeks v. Angelone</u>, 528 U.S.

11  225, 234 (2000).

12         For the foregoing reasons, the Court of Appeal's rejection of this claim was

13  not contrary to, or an objectively unreasonable application of, any clearly

14  established federal law as determined by the United States Supreme Court, and did

15  not constitute an unreasonable determination of the facts in light of the evidence

16  presented.  Accordingly, petitioner is not entitled to federal habeas relief on this

17  claim.

18  **F.     Petitioner Is Not Entitled to Federal Habeas Relief on Claim 6 –**

19  **        Prosecutorial Misconduct**

20         Petitioner argues that the prosecutor committed misconduct in closing

21  argument by vouching for the credibility of Detectives Sloan and House based on

22  facts which were not in evidence.  (Petition at 43-45; Traverse at 43-46).  The

23  California Court of Appeal – the last state court to issue a reasoned decision

24  addressing this claim – rejected it on the merits on direct appeal.  (Lodged Doc. 6

25  at 20).  Petitioner is not entitled to federal habeas relief on this claim.

26  ///

27  ///

28  ///

### 1.   Pertinent Facts[20]

Petitioner's trial counsel in closing argument theorized that the detectives had conspired to frame petitioner.  In his rebuttal closing argument, the prosecutor responded that two detectives, "in good standing," would not risk their entire careers or risk going to federal prison to frame someone they did not know.

### 2.   Pertinent Law

A prosecutor's improper remarks at trial "will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)) (internal quotation marks omitted); see also Deck v. Jenkins, 768 F.3d 1015, 1022 (9th Cir. 2014) (Darden announced "clearly established Federal law" applicable to claims of "prosecutor's improper comments" on federal habeas review).  "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned. . . .  The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden, 477 U.S. at 181 (citation, internal citation and internal quotation marks omitted); Hein v. Sullivan, 601 F.3d 897, 912 (9th Cir. 2010) (citing id.), cert. denied, 131 S. Ct. 2093 (2011).

In fashioning closing arguments, prosecutors are allowed reasonably wide latitude.  See United States v. Henderson, 241 F.3d 638, 652 (9th Cir. 2000), as amended (Mar. 5, 2001) (during closing argument "[p]rosecutors have considerable leeway to strike 'hard blows' based on the evidence and all reasonable inferences from the evidence" ) (citations omitted), cert. denied, 532 U.S. 986 (2001).  Although prosecutors may "strike hard blows" in closing

---

[20]Unless otherwise indicated by citations to the record, the facts set forth are drawn from the California Court of Appeal's decision on direct appeal.  (Lodged Doc. 6 at 20).  Such factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

1   argument, however, they may not "strike foul ones." Berger v. United States, 295

2   U.S. 78, 88 (1935), overruled on other grounds, Stirone v. United States, 361 U.S.

3   212 (1960).  Determining whether a due process violation occurred requires an

4   examination of the entire proceedings so the prosecutor's argument may be placed

5   in proper context.  Boyde v. California, 494 U.S. 370, 384-85 (1990); Greer v.

6   Miller, 483 U.S. 756, 765-66 (1987).  Factors courts consider include "whether the

7   [prosecutor's] comment misstated the evidence, whether the judge admonished the

8   jury to disregard the comment, whether the comment was invited by defense

9   counsel in its summation, [and] whether defense counsel had an adequate

10  opportunity to rebut the comment. . . ." Hein, 601 F.3d at 912-13 (citing Darden,

11  477 U.S. at 182).

12       It is clearly established that a prosecutor commits misconduct when he or

13  she manipulates or misstates the evidence presented during the trial, offers

14  unsolicited personal views on the evidence, or vouches for the veracity of a

15  government witness.  Darden, 477 U.S. at 181-82; United States v. Young, 470

16  U.S. 1, 7, 18-19 (1985); King v. Schriro, 537 F.3d 1062, 1068-69 (9th Cir. 2008),

17  cert. denied, 556 U.S. 1107 (2009).  "Improper vouching typically occurs in two

18  situations:  (1) the prosecutor places the prestige of the government behind a

19  witness by expressing his or her personal belief in the veracity of the witness, or

20  (2) the prosecutor indicates that information not presented to the jury supports the

21  witness's testimony." United States v. Brooks, 508 F.3d 1205, 1209 (9th Cir.

22  2007) (citation and internal quotation marks omitted).

23       Where a state court has rejected a prosecutorial misconduct claim on the

24  merits, federal habeas relief may be granted only if the state court's application of

25  Darden was objectively unreasonable.  See Parker, 132 S. Ct. at 2153, 2155

26  (citations omitted).  Since Darden established "a very general [standard]," the

27  range of possible reasonable applications of that standard is substantial, and thus

28  significant deference is given to state court adjudications of such prosecutorial

1  misconduct claims.  Parker, 132 S. Ct. at 2155 (citation omitted); see also

2  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) (in assessing whether state

3  court's adjudication of claim involved unreasonable application of clearly

4  established law, court must consider legal rule's specificity; the more general the

5  rule, the more leeway courts have in reaching outcomes in case-by-case

6  determinations).

7      In addition, on habeas review, a federal court will not disturb a conviction

8  unless the alleged prosecutorial misconduct had a substantial and injurious effect

9  or influence in determining the jury's verdict.  See Burks v. Borg, 27 F.3d 1424,

10 1431 (9th Cir. 1994) (Brecht standard applies to claims of prosecutorial

11 misconduct), cert. denied, 513 U.S. 1095, 1160 (1995).

12                    **3.    Analysis**

13     The Court of Appeal reasonably concluded that no prosecutorial misconduct

14 had occurred and reasonably rejected petitioner's contention that, in light of the

15 previously referenced allegations by Rodriguez that the detectives had lied, the

16 prosecutor was affirmatively misleading the jury.  The Court of Appeal noted:

17         Here, there were no charges or convictions relating to the alleged

18         perjury committed by Detective House or Sloan in Rodriguez's case.

19         Instead, there was extensive testimony about the detectives' many

20         years of service and training in the sheriff department.  In any event,

21         the jury was instructed and presumably understood that statements

22         made by the attorneys during trial were not evidence.  [Citation].

23 (Lodged Doc. 6 at 20).  This Court agrees with the findings and analysis of the

24 Court of Appeal.

25     Here, the prosecutor did not offer his personal assurances that the detectives

26 were telling the truth or suggest any evidence outside the record supported their

27 testimony.  A prosecutor has "reasonable latitude" in fashioning closing arguments

28 and can argue "reasonable inferences" from the evidence, as here.  On this record,

                            42

the prosecutor did not improperly vouch for the witnesses or mislead the jury.
Moreover, the trial court properly instructed the jury that it "must determine what
facts have been proved by the evidence" and that "[s]tatements made by the
attorneys during the trial are not evidence." (CT 86, 89, 90). Compare Duckett v.
Godinez, 67 F.3d 734, 743 (9th Cir. 1995) (assuming prosecutor's comment was
improper, no constitutional violation based on isolated moment in lengthy trial
were jury was instructed that the statements of attorneys are not evidence), cert.
denied, 517 U.S. 1158 (1996). Again, the jury is presumed to have followed the
trial court's instructions. See Weeks v. Angelone. 528 U.S. at 226.

In sum, the Court of Appeal's rejection of petitioner's prosecutorial
misconduct claim was not contrary to, or an unreasonable application of, clearly
established federal law and was not based on an unreasonable determination of the
facts in light of the evidence presented. Accordingly, petitioner is not entitled to
federal habeas relief on this claim.

### G. Petitioner Is Not Entitled to Federal Habeas Relief on Claim 7 – Cumulative Error

Petitioner contends that the cumulative effect of the errors alleged in Claims
2-6 denied him due process. (Petition at 46-50; Traverse at 47-50). This claim
was rejected on direct appeal without comment. (Lodged Docs. 3, 6-8). Based
upon an independent review of the record, this Court concludes that petitioner is
not entitled to federal habeas relief based thereon. This Court has considered and
rejected Claim 2-6 on the merits. "While the combined effect of multiple errors
may violate due process even when no single error amounts to a constitutional
violation or requires reversal, habeas relief is warranted only where the errors
infect a trial with unfairness." Payton v. Cullen, 658 F.3d 890, 896-97 (9th Cir.
2011), cert. denied, 133 S. Ct. 426 (2012). Habeas relief on a theory of cumulative
error is appropriate when there is a "'unique symmetry' of otherwise harmless
errors, such that they amplify each other in relation to a key contested issue in the

case." <u>Ybarra v. McDaniel</u>, 656 F.3d 984, 1001 (9th Cir. 2011), <u>cert. denied</u>, 133 S. Ct. 424 (2012) (citation omitted).  Here, no such symmetry of otherwise harmless errors exists.  The claimed errors either were not errors or were not prejudicial, or both.  Petitioner's claim of cumulative error is meritless and accordingly, does not entitle petitioner to federal habeas relief.

## VI.    ORDER

IT IS THEREFORE ORDERED:  (1) the Petition is denied; (2) Claim 1 is dismissed without prejudice; (3) petitioner's remaining claims are dismissed with prejudice; and (4) Judgment shall be entered accordingly.

DATED:  April 13, 2015

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE